UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-81107-Cannon/McCabe

CAMERON MOORE,

     Plaintiff,

v.

JASMINE REDD,

     Defendant.

_____/

## REPORT & RECOMMENDATION

THIS CAUSE comes before the Court on Plaintiff Cameron Moore's motion to dismiss Defendant Jasmine Redd's Counterclaim, which was referred to the undersigned by United States District Judge Aileen M. Cannon.  (DE 20, DE 23).  For the reasons set forth below, the undersigned **RECOMMENDS** that the motion be **DENIED**.

## I.     BACKGROUND

This is a tort case between two former romantic partners.  By way of his Amended Complaint, Plaintiff alleges that Defendant secretly recorded private conversations without his consent and later disseminated those recordings to third parties in violation of Florida law.  (DE 10 ¶¶ 8-43).  Plaintiff further alleges that Defendant made false statements about him to third parties, accusing him of sexual misconduct.  (DE 10 ¶¶ 20, 51-68).  Plaintiff alleges three counts against Defendant: (1) violation of Fla. Stat. § 934.10, pertaining to interception of wire or oral communications, (2) invasion of privacy, and (3) defamation per se.  (DE 10 ¶¶ 37-68).

In response, Defendant asserts eleven affirmative defenses and a counterclaim for civil battery. (DE 16 at 19-23). The counterclaim, which the Court accepts as true for purposes of this motion, describes a romantic relationship filled with threats and intimidation, culminating in a sexual battery on November 2, 2023. The relationship began in or around August 2023, when Plaintiff contacted Defendant through social media, offering to assist Defendant "in pursuing justice related to her father's death" (the counterclaim does not explain how the father died). (DE 16 ¶ 6). Thereafter, the parties had multiple in-person meetings and began a romantic relationship. (DE 16 ¶ 7). Plaintiff cultivated the relationship by using emotional pressure, manipulation, and repeated reassurances that he would use his wealth and political connections to promote the deceased father's story. (DE 16 ¶¶ 8, 12).

As the relationship progressed, Plaintiff began to assert control over Defendant through intimidation, causing Defendant to fear the consequences of refusing his requests. (DE 16 ¶ 9). Plaintiff made statements to Defendant to the effect that he would destroy her life. (DE 16 ¶ 10). He also engaged in "graphic discussions of killing those who had wronged him," which Defendant perceived as an implicit threat directed toward her. (DE 16 ¶ 11).

On or about November 1, 2023, Defendant traveled with Plaintiff to Palm Beach County, Florida, to stay at a hotel. (DE 16 ¶ 13). In the early morning hours of November 2, 2023, Plaintiff initiated sexual contact with Defendant without her consent. (DE 16 ¶ 17). Due to Plaintiff's prior statements, threatening behavior, and Defendant's fear for her physical safety, Defendant froze and was unable to resist or verbally object. (DE 16 ¶ 18). Plaintiff proceeded with sexual intercourse despite Defendant's lack of consent and her visible distress. (DE 16 ¶ 20). During the

encounter, Plaintiff intentionally ejaculated inside Defendant without her consent.  (DE 16 ¶ 21).

Immediately thereafter, Defendant experienced fear, panic, and distress, and she told Plaintiff she

wanted to leave Florida and return home.  (DE 16 ¶ 22).

Later that morning, Defendant asked Plaintiff to take her to a pharmacy to obtain

emergency contraception and to allow her to return home.  (DE 16 ¶ 24).  In response, Plaintiff

became agitated and acted in a manner that caused Defendant to fear for her safety.  (DE 16 ¶ 25).

While driving Defendant to the pharmacy, Plaintiff drove erratically and angrily, further escalating

Defendant's fear for her physical safety.  (DE 16 ¶ 26).

Defendant ultimately escaped Plaintiff's control and returned home.  (DE 16 ¶ 27).  After

Defendant returned home, Plaintiff continued to send threatening messages to Defendant and

members of her family.  (DE 16 ¶ 28).  Defendant suffered, and continues to suffer, severe

emotional distress, fear for her personal safety, humiliation, anxiety, and psychological harm.  (DE

16 ¶ 29).  Based on the above conduct, Plaintiff alleges a claim of civil battery and seeks

compensatory and punitive damages.  (DE 16 at 23).

## II.     LEGAL STANDARD

By way of this motion, Plaintiff seeks dismissal of Defendant's counterclaim pursuant to

Fed. R. Civ. P. 12(b)(6).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a

claim, courts must accept the allegations in the counterclaim as true and construe them in the light

most favorable to the counter-claimant.  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir.

2008).  Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that

the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action

will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Instead, the counterclaim

"must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the [counter-claimant] pleads factual content that allows the court to draw the reasonable inference that the [counter-claimee] is liable for the misconduct alleged." *Id.* (cleaned up).

### III.   DISCUSSION

Plaintiff seeks dismissal of the counterclaim, or in the alternative, an order requiring Defendant to clarify the counterclaim. The Court will address each issue in turn.

#### A.   Dismissal

The counterclaim alleges a claim for civil battery under Florida common law. (DE 16 at 19-23). To state a claim for civil battery, a plaintiff must allege facts that show (1) the intent to cause a harmful or offensive contact with another person; and (2) an offensive contact that directly or indirectly results therefrom. *Brown v. J.C. Penney Corp.*, 521 F. App'x 922, 923 (11th Cir. 2013) (citing *Chorak v. Naughton*, 409 So. 2d 35, 39 (Fla. 2d DCA 1981)); *see also Quilling v. Price*, 894 So. 2d 1061, 1063 (Fla. 5th DCA 2005) ("Battery consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent."). "Taking indecent liberties with a woman without her consent is of course a battery." *McDonald v. Ford*, 223 So. 2d 553, 555 (Fla. 2d DCA 1969) (citing Prosser, Law of Torts, 35 (3d ed.1964)).

Plaintiff moves to dismiss the counterclaim on the grounds that Defendant fails to allege sufficient facts to show lack of consent to the sexual encounter at issue. (DE 20 at 2-5). The Court rejects this argument and finds the allegations sufficient for two reasons.

4

First, consent operates as an affirmative defense to civil battery under Florida law, not as an element of proof that a plaintiff must plead and prove the absence thereof. *See Medina v. United Christian Evangelistic Ass'n*, No. 08-22111-CIV, 2009 WL 3161642, at \*3 (S.D. Fla. Sept. 28, 2009) ("In Florida, consent is an affirmative defense to a claim of battery."); *Hernandez v. K–Mart Corp.*, 497 So. 2d 1259, 1260 (Fla. 3d DCA 1986) (noting that defendant in battery case had burden to prove consent). The mere "existence of an affirmative defense will not support a motion to dismiss" unless the defense "appears on the face of the complaint." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1225 n.8 (11th Cir. 2016); *see also Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984) (noting that "[g]enerally, the existence of an affirmative defense will not support a motion to dismiss").

Second, even if the Court were inclined to consider consent at this stage of the case, the counterclaim makes plausible allegations of lack of consent. The counterclaim repeatedly alleges that Plaintiff did not consent to the sexual encounter at issue. (DE 16 ¶¶ 17, 20, 32, 33, 34). The counterclaim also makes supporting allegations, including the following:

- The relationship had a history of intimidation and threats. (DE 16 ¶¶ 8-12, 18).

- The encounter began without Defendant's consent. (DE 16 ¶ 17).

- Defendant was "unable to resist or verbally object" due to Plaintiff's greater physical size. (DE 16 ¶¶ 18-19).

- Defendant "froze" during the encounter itself due to Defendant's fear of Plaintiff. (DE 16 ¶ 18).

- Plaintiff proceeded with intercourse despite Defendant's "lack of consent and her visible distress." (DE 16 ¶ 20).

- Plaintiff ejaculated inside Defendant without her consent. (DE 16 ¶ 21).

- Following the encounter, Defendant remained in distress and requested to go to the pharmacy to obtain emergency contraception. (DE 16 ¶¶ 22-24).

- Defendant also requested to return home following the encounter. (DE 16 ¶ 24).

The Court finds these allegations sufficient to state a plausible claim for lack of consent. *See Romero v. Agent Au Pair, Inc.*, No. 6:24-CV-1749-JSS-RMN, 2025 WL 2110244, at *3 (M.D. Fla. July 24, 2025), *R. & R. adopted*, 2025 WL 2369270 (M.D. Fla. Aug. 14, 2025) (denying motion to dismiss battery claim where plaintiff alleged lack of consent to sexual touching); *Yule v. Ocean Reef Cmty. Ass'n*, No. 19-10138-CIV, 2020 WL 3051505, at *4 (S.D. Fla. June 8, 2020) (denying motion to dismiss battery claim where plaintiff alleged "uninvited" physical contact, and "unwelcome" sexual contact). Put differently, Defendant's allegations go beyond mere boilerplate and contain sufficient factual matter to make the claim plausible.

The Court notes, in this regard, that Florida courts have repeatedly recognized that questions of consent present fact-intensive issues typically reserved for juries to decide. *See Paneson v. Zubillaga*, 753 So. 2d 127, 129 (Fla. 2d DCA 2000) (reversing summary judgment as to whether a consensual medical contact became a non-consensual sexual contact and finding that scope of consent must go to the jury); *Hufham v. State*, 400 So. 2d 133, 135 (Fla. 5th DCA 1981) (noting that "'[c]onsent' is a relative term to be viewed under the circumstances of each case" and is "essentially a question for the jury"). Also, the mere existence of a past sexual relationship does

not establish consent to future sexual contact. *See State v. Smith*, 401 So. 2d 1126, 1129 (Fla. 5th DCA 1981) (noting that even marriage carries no implied consent). In the Court's view, consent cannot be decided at the pleadings stage of this case.

In support of dismissal, Plaintiff cites *Statler v. State*, 349 So. 3d 873 (Fla. 2022), a case dealing with statutory construction of Florida's sexual battery statute, Fla. Stat. § 794.011(5)(b). Plaintiff acknowledges that *Statler* concerns a criminal statute, but Plaintiff argues that Florida courts often analogize civil battery claims to criminal battery statutes. *See Mason v. Florida Sheriff's Self-Ins. Fund*, 699 So. 2d 268, 270 n.1 (Fla. 5th DCA 1997) (noting that "there is no difference between the tort of battery and the crime of battery"). The Court agrees that Florida's sexual battery statute offers some (but not complete) guidance for analyzing the civil battery tort alleged here. The Court disagrees, however, that *Statler* supports dismissal of the counterclaim.

The facts of *Statler* are instructive. In *Statler*, the victim consented to sexual intercourse with a paramour named Tait. *Id.* at 875-76. At some point, Tait exited the bedroom and bragged about the encounter to another person in the house, Statler. *Id.* at 876. Tait told Statler, "You could try if you want." *Id.* Statler then entered the bedroom and had sexual intercourse with the victim in a manner that did not allow her to see her partner. *Id.* The victim, believing she was having sex with Tait, made several comments indicating her approval. *Id.* When the encounter ended, and the victim learned she had just had sex with Statler, a fight broke out, with the victim attacking Statler. *Id.* at 877.

When the State later charged Statler with sexual battery, he defended the case by arguing that he subjectively believed the victim had consented to the sexual encounter. *Id.* The Florida Supreme Court rejected this defense, recognizing that sexual battery is a general intent crime under

7

Florida law.  *Id.* at 878-884.  As such, in a criminal prosecution for sexual battery under Florida law, the State must prove the victim's lack of consent as an element of the crime, but the State need not prove that the defendant *became subjectively aware of the victim's lack of consent.*  *Id.* at 879 ("As a matter of statutory interpretation, the First District is correct that [the sexual battery statute] does not require the State to prove that a criminal defendant knew or should have known the victim did not consent to sexual intercourse.").

> The *Statler* court explained the distinction as follows:
>
> These two different questions—whether the [victim] in fact consented to sex, versus whether the defendant knew or should have known that the [victim] did not—seem close, especially because some evidence may be relevant to either question. But the statute only requires the State to establish the former, not the latter.

*Id.* at 880.  In other words, the State must prove, as a factual matter, that the victim was not a "willing partner," but the State need not prove that the defendant knew of the victim's unwillingness.  *Id.*

As to the State's burden to prove lack of consent, the *Statler* court noted that the sexual battery statute defines "consent" as "intelligent, knowing, and voluntary consent and does not include coerced submission."  Fla. Stat. § 794.011(1)(a).  The court further noted that "[b]ecause the existence or absence of consent is an objective determination to be made from facts observable by a reasonable person, the jury's finding [regarding consent] must turn on what the [victim] said and did."  *Id.* at 880.  In this regard, consent "depends not on the inner workings of each party's mind, but on how each party's state of mind is made manifest to the other."  *Id.*  At the same time, the *Statler* court observed that consent "shall not be deemed or construed to mean the failure by

the alleged victim to offer physical resistance to the offender." *Id.* at n.3 (quoting Fla. Stat. § 794.011(1)(a)).

The court affirmed Statler's conviction, finding that the jury drew permissible inferences from the facts to determine that the victim had not consented to sex with Statler. *Id.* at 885. Of significance here, these facts included the victim's "reactions upon learning that it had been Statler, and not Tait, who was engaged in intercourse with her...." *Id.* at 880. In other words, the jury reasonably inferred, from the victim's post-encounter conduct, that she had not consented. *Id.* And as stated, of course, the court rejected all arguments concerning Statler's own subjective belief concerning consent, finding that issue unnecessary to support a conviction. *Id.* at 880-81.

*Statler* does not support a dismissal here for two reasons. First, to the extent Plaintiff argues that *Statler* means Defendant had to manifest her non-consent with sufficient clarity to make it *subjectively known to Defendant*, *Statler* stands for the opposite proposition. Indeed, if Plaintiff were facing a criminal prosecution under Fla. Stat. § 794.011(5)(b), his own subjective view of Defendant's consent would not support a defense to the case.

Second, to the extent Plaintiff argues that the counterclaim fails to allege sufficient facts to show Plaintiff manifested her non-consent with sufficient clarity to make it known to a reasonable, objective person, the Court again disagrees. For the reasons set forth above, the Court finds that the counterclaim alleges sufficient facts to show a plausible claim of non-consent. Indeed, *Statler* supports this conclusion as the *Statler* court affirmed the jury's finding of non-consent based, in part, upon the victim's post-encounter conduct. *Id.* at 880-81. Here, Defendant likewise alleges post-encounter conduct that supports her claim of non-consent, including her desire to go to the

9

pharmacy to obtain emergency contraception and her desire to leave Florida the morning after the encounter.  (DE 16 ¶¶ 23-24, 26).  For all of the above reasons, the motion should be denied.

### B.      Clarification

Alternatively, Plaintiff argues that Defendant should be ordered to re-plead or clarify the counterclaim in light of her allegation that Plaintiff ejaculated inside of her without her consent. (DE 16 ¶ 21).  Plaintiff expresses confusion over whether the act of ejaculation might qualify as a distinct battery, separate and apart from the rest of the sexual encounter.  (DE 20 at 6-7).  The Court finds no clarification necessary.  As a general rule, pleadings must give opponents "adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).  Here, the counterclaim asserts a single cause of action for civil battery, consisting of a non-consensual sexual encounter.  In the Court's view, Defendant need not sub-divide the counterclaim based on each constituent part of the encounter.  In a bar fight, for example, a plaintiff need not allege a separate count for each punch landed by the assailant.  The same is true here.  The motion should be denied.

### IV.      <u>RECOMMENDATION & NOTICE OF RIGHT TO OBJECT</u>

For the reasons stated above, the undersigned **RECOMMENDS** that the motion to dismiss (DE 20) be **DENIED**.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the United States District Judge.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the

parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THE PARTY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 2nd day of March 2026.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE

11